UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WANDA A. PINKNEY,

                    Plaintiff,

          -against-

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,

                    Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-4689 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Wanda A. Pinkney brings this action, pursuant to 42 U.S.C. § 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that Pinkney did not have an impairment that precluded her from performing all work in the national and local economies and therefore was not entitled to supplemental security income ("SSI"). Defendant Carolyn W. Colvin, Acting Commissioner of the SSA ("the Commissioner"), argues that the correct legal standards were applied and the Commissioner's final decision should be affirmed. The Commissioner filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is DENIED and this case is REMANDED to the SSA for further proceedings.

I.     BACKGROUND

Pinkney was born on October 5, 1974. (Administrative Record ("Rec.") (Dkt. 17) at 58.) She had previously worked as a home health aide. (Id. at 248.) On October 20, 2008, Pinkney arrived at the Wyckoff Medical Center emergency room for a headache and pain in her right hand caused by eczema. (Id. at 307.) Pinkney told her doctors that she was unable to work due to the eczema and difficulty using her right hand. (Id. at 254-56.)

On November 27, 2009, Pinkney filed a pro se application for SSI benefits, claiming that she had been disabled since November 2, 2008, due to right carpal tunnel syndrome, right shoulder pain, asthma, eczema, and headaches. (Id. at 11, 43-44, 256.) She alleged that her impairments prevented her from bathing, getting dressed, cooking, and walking long distances, and that she suffered constant pain in her right hand. (Id. at 44-47.) The SSA denied her application on February 5, 2010. (Id. at 11.)

Pinkney requested a hearing on her application; Administrative Law Judge Lori Romeo ("ALJ") held hearings on the application on July 15, 2010, and February 7, 2011. (Id. at 23, 35.) Pinkney, medical expert Osvaldo Fulco, M.D., and vocational expert Miriam Greene testified at the hearings. (Id.) On April 8, 2011, the ALJ issued a written decision that Pinkney was not disabled within the meaning of the Social Security Act. (Id. at 11-19.) Pinkney requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at 7.) The Appeals Council denied Pinkney's request for review on August 30, 2011 (id. at 1-5), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On September 21, 2011, Pinkney filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. § 1383(c), of the SSA's decision that she was not disabled and therefore not entitled to SSI. (Compl. (Dkt. 1).) The Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def. Mem. (Dkt. 16) at 1.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and

where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

B. Review of Final Determinations of the Social Security Administration

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as

long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

4

> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "demonstrate[] that other work exists in significant numbers in the national economy that [the claimant] can do given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or

denying benefits." Id. That duty is "heightened" when, as here, the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III. DISCUSSION

Pinkney argues that the ALJ erred in concluding that she was not disabled under the Social Security Act. (Compl. at ¶ 6.) However, the Commissioner argues in her Motion for Judgment on the Pleadings that the ALJ's decision is supported by substantial evidence and that the ALJ applied all the correct legal standards.

### A. The ALJ's Application of the Five-Step Analysis

The court finds that the ALJ's application of the five-step analysis was sufficient. At step one, the ALJ properly noted that Pinkney had not been involved in substantial gainful activity since the date that her application was filed with the SSA on November 27, 2009. (Rec. at 13, 42.) Based on objective medical evidence, the ALJ then determined, at step two, that Pinkney had the following severe impairments: hypertension, asthma, carpal tunnel syndrome, obesity, and contact dermatitis. (Id. at 13.) The supporting objective medical evidence includes the opinions of both treating and non-treating physicians. (Id. at 15-17.) At step three, the ALJ discussed Pinkney's impairments in light of the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, to determine that none of her impairments met or equaled any of the listing requirements. (Id. at 14.) Specifically, Pinkney did not meet Listing 1.02 for major dysfunction of a joint because it requires that there be an issue with a major joint from *each* upper extremity, and Pinkney suffered issues with only her right arm. (Id.) Pinkney did not meet the requirements for Listing 3.03 for asthma or Listing 8.05 for dermatitis because both were well controlled and did not have significant impacts on her life. (Id.)

At step four, the ALJ must determine Pinkney's residual functional capacity ("RFC"). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C. F. R. § 404.1545 and § 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy and very heavy." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (1996).

Here, the ALJ performed the RFC assessment on a function-by-function basis, according to the functions listed in paragraphs (b), (c), and (d) of 20 C. F. R. § 404.1545. (Rec. at 17.) The ALJ found that Pinkney had the RFC "to perform light work" but that she could lift or carry only ten pounds with both arms and five pounds with only the right arm, she was "unable to reach with her right arm," and she "need[ed] to avoid pulmonary irritants." (Id. at 14.) The ALJ stated that Pinkney was "unrestricted in her ability to sit, stand or walk" but had limitations when reaching, grasping, turning, carrying, and lifting with her right arm. (Id. at 17.) These findings sufficiently apply the regulations' function-by-function RFC assessment procedure.

Based on the RFC, the ALJ found that Pinkney was "unable to perform [her] past relevant work." (Id. at 17-18.) The ALJ relied on an impartial vocational expert, Miriam Greene, to determine that Pinkney's past work required a level of exertion above the light or sedentary work of which Pinkney was capable. (Id. at 17.)[1]

Lastly, at step five, the ALJ again relied on the testimony of Greene to determine that there are several jobs available in the national and local economy for Pinkney, as determined by her RFC, age, education, and work experience. (Id. at 17-18.) The ALJ concluded that Pinkney

---

[1] While the ALJ determined that Pinkney is capable of light work, the court notes that she is also capable of sedentary work as the exertion levels are cumulative, i.e. one who can complete light work can also complete sedentary work and one who can complete medium work can also complete both light and sedentary work. See 20 C.F.R. § 404.1567. As Pinkney's past work was at a medium level of exertion (Rec. at 28), it was clearly beyond Pinkney's RFC as determined by the ALJ.

"is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" based on the availability of sedentary and light work discussed by Greene and consistent with the <u>Dictionary of Occupational Titles</u>. (<u>Id.</u> at 18.) The ALJ described two possible jobs, usher and school bus monitor, to illustrate potential positions available to Pinkney. (<u>Id.</u>) Accordingly, the ALJ concluded that Pinkney was not disabled within the meaning of the Social Security Act. (<u>Id.</u>)

On the basis of the five step analysis, the ALJ's analysis is sufficient to conclude that Pinkney is not disabled as defined by the Social Security Act.

### B. Evaluation of Pinkney's Treating Physicians

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." <u>Sokol v. Astrue</u>, No. 04-CV-6631 (KMK), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical providers' opinions—"conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling." <u>Snell</u>, 177 F.3d at 133. In any event, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner," and therefore the treating

physician's conclusions on these issues are never given controlling weight. Id. (internal quotation marks omitted).

When an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must assess several factors to determine how *much* weight to give the opinion. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Dr. Blumenthal and Ms. Marshall, the treating physicians in this case, are a rheumatologist and a nurse practitioner, respectively, at Woodhull Medical and Mental Health Center. (Rec. at 262-63.) They treated Pinkney on several occasions from May 2009 until July 2010, in connection with the pain in Pinkney's right arm, eczema, asthma, and elevated rheumatoid factor.[2] (Id. at 262, 265-68, 272, 322, 356.) In her Treating Physician's Wellness Report dated April 30, 2009, Ms. Marshall indicated that Pinkney had right hand joint pain, referred her to a rheumatologist, and opined that Pinkney would be unable to work for at least

---

[2] Prior to seeing Dr. Blumenthal and Ms. Marshall, Pinkney was treated at the Wyckoff Medical Center emergency room on October 20, 2008, for painful eczema and a headache. (Rec. at 307.) She was also examined by Nana Aivazi, M.D., on November 7, 2008, and Syed Hassan, M.D., on January 13, 2009, each on one occasion. (Rec. at 243-44, 253-58.)

9

twelve months. (Id. at 241-42.) The rheumatologist and treating physician, Dr. Blumenthal, noted in his report dated October 30, 2009, that Pinkney had right carpal tunnel syndrome, which was slightly improved with a wrist splint, and that Pinkney would try physical therapy. (Id. at 234-35.) Dr. Blumenthal also opined that Pinkney would be unable to work for at least twelve months. (Id. at 235.)

The ALJ found that Dr. Blumenthal's and Ms. Marshall's opinions were inconsistent with other objective medical evidence contained in the record—most notably the opinions of examining physician Dr. Eyassu and impartial medical expert Dr. Fulco (id. at 16)—and concluded that Pinkney had a RFC for light work with additional limitations (id. at 17). In order to determine whether the ALJ properly evaluated Dr. Blumenthal's and Ms. Marshall's opinions, the court must first decide whether these opinions were entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for discounting the opinions of the treating physicians, Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2).

1. Controlling Weight

The ALJ properly found that Dr. Blumenthal's and Ms. Marshall's opinions were not entitled to controlling weight because they were inconsistent with other substantial evidence in the record, see 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133.

As the ALJ noted, the opinions of both Dr. Fulco and Dr. Eyassu were consistent with an RFC for light work, unlike those of Dr. Blumenthal and Ms. Marshall, which stated that Pinkney was not able to work at all for at least 12 months. (Rec. at 16.) The ALJ stated that great weight was accorded to Dr. Fulco's opinion because he reviewed the medical evidence and heard Pinkney's testimony, and to Dr. Eyassu's opinion because she had the opportunity to examine Pinkney. (Id.)

On August 17, 2007, Dr. Eyassu conducted a consultative examination of Pinkney. (Id. at 283-86.) Among other things, Dr. Eyassu reported that Pinkney "appeared to be in no acute distress"; that she "[n]eed[ed] no help changing for [the] exam" or "getting on and off [the] exam table"; that she was "[a]ble to rise from [her] chair without difficulty"; that she had a "[f]ull range of motion of [her] shoulders, elbows, forearms, and wrists bilaterally" although Pinkney had shoulder pain on this examination; and that she had full strength "in the upper and lower extremities." (Id. at 284-85.) Based on her examination, Dr. Eyassu diagnosed Pinkney with right carpal tunnel syndrome, right shoulder pain, asthma, and migraines, and opined that Pinkney had minimal limitations for reaching up, sustained pushing, pulling, gripping, and grasping, and needed to avoid respiratory irritants. (Id. at 286.) Pinkney's fine motor activity was intact and Pinkney had no problems zipping, buttoning, and tying. (Id. at 285.) Dr. Eyassu did not opine on any limitations on Pinkney's ability to sit, stand, or walk. (Id. 283-86.)

The opinion of Dr. Fulco, the impartial medical expert, is also inconsistent with those of Dr. Blumenthal and Ms. Marshall. On July 15, 2010, Dr. Fulco reviewed Pinkney's medical records at the hearing held by the ALJ. (Id. at 50-51.) Dr. Fulco opined, among other things, that Pinkney had the ability to stand, walk, or sit six hours in an eight-hour day and to lift and carry up to five pounds with the right arm and ten pounds with both arms. (Id. at 51.) Dr. Fulco noted that Pinkney was limited in her ability to reach overhead with her right arm, was limited in performing fine manipulations with the right hand, and needed to avoid respiratory irritants. (Id.) When asked to respond to Pinkey's complaint about arthritis, Dr. Fulco stated that this issue was "ruled out" in Dr. Blumenthal's previous medical record. (Id. at 52.)

Because Dr. Blumenthal's and Ms. Marshall's opinions were inconsistent with those of Dr. Eyassu and Dr. Fulco, the ALJ decided that the treating physicians' opinions were not

11

entitled to controlling weight. (Rec. at 16.) Furthermore, nurse practitioners are not "acceptable medical source[s]" of evidence and are therefore never entitled to controlling weight, providing additional basis for not assigning Ms. Marshall's opinion controlling weight. 20 C.F.R. § 416.913.

2. ALJ Reasoning for Weight Given to the Treating Physicians

While the ALJ properly concluded that the treating physicians' opinions were not entitled to controlling weight, the question remains whether the ALJ provided "good reasons" for the ultimate weight assigned to Dr. Blumenthal's and Ms. Marshall's opinions, Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2). After discussing the opinions of the two non-treating physicians, the ALJ states that *some*, but not controlling, weight was given to the treating physicians. (Rec. at 16.) While it is evident that some of the factors set forth in 20 C.F.R. § 404.1527(c) were considered, the ALJ failed to properly analyze other factors, and therefore did not provide sufficient "good reasons" for her decision.

The ALJ must base the decision to accord less than controlling weight to a treating physician by "consider[ing] *all* of the . . . factors" listed in 20 C.F.R. § 404.1527(c)(2)-(6) (emphasis added). These factors are: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503; see also 20 C.F.R. § 404.1527(c)(2)-(6). "It is not enough for the ALJ to simply say that [a treating physician's] findings are inconsistent with the rest of the record. The ALJ [must] provide[] reasons which explain that inconsistency with these other parts." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004).

12

It is not apparent that the ALJ weighed the first factor concerning the treatment relationship between Pinkney and either Dr. Blumenthal or Ms. Marshall, who both examined Pinkney in person on several occasions over the course of sixteen months. By contrast, Dr. Fulco never examined Pinkney or met her in person; he analyzed her medical records and heard her testify over a phone call during the hearing. (Rec. at 49-52.) Dr. Eyassu had the opportunity to examine Pinkney only once. These facts were not scrutinized by the ALJ as required under the regulations. See Pogozelski, 2004 WL 1146059, at *13 (ALJ erred in according "more than limited weight" to opinion of physician who had examined the claimant on only one occasion); Crespo v. Apfel, No. 97-CV-4777 (MGC), 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (noting that a "consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day").

Although the ALJ considered the second and third factors when evaluating the weight accorded to Pinkney's treating physicians, the consideration was not sufficient to provide the necessary "good reasons." The medical opinion of neurologist Peter Tse, M.D., stated that Pinkney suffered from mild right carpal tunnel syndrome after undergoing a motor nerve conduction test and sense nerve conduction test. (Rec. at 271, 276.) Dr. Tse's diagnosis of Pinkney's condition is the only time the term "mild" is used in any medical report in the Administrative Record to explain Pinkney's carpal tunnel syndrome. While the ALJ relied heavily on the fact that Pinkney's condition was merely mild, she failed to cite the supporting medical evidence found in Dr. Tse's opinion. (Id. at 15-17.) Therefore, the ALJ's opinion failed to analyze the evidence supporting the treating physicians' opinions, as is required by the second factor. In addition, the ALJ failed to consider the third factor. The ALJ did not examine the

consistency of the opinions of the treating physicians with the record as a whole, as the opinions of Dr. Blumenthal and Ms. Marshall were never considered in light of Dr. Tse's opinion.

It is not apparent that the ALJ considered the fourth factor concerning specialization. The ALJ never mentioned that Dr. Blumenthal specialized in rheumatology and that his opinion may therefore be entitled to greater weight. This is clearly insufficient.

While it is possible to accord lesser, non-controlling weight to treating physicians, doing so must be supported by "good reasons," and this was not accomplished in the ALJ's opinion. The ALJ concluded that Pinkney's impairments were not of the severity alleged. This conclusion lacked sufficient consideration and analysis of the medical opinions of the treating physicians.

### C. Pinkney's Credibility

The ALJ's determination that Pinkney's allegations were inconsistent with the medical evidence (id. at 15, 17) was tainted by the ALJ's failure to properly weight the opinions of Pinkney's treating physicians—a failure that would naturally have affected how the ALJ viewed Pinkney's credibility. On remand, the ALJ is directed to consider Pinkney's subjective complaints in light of the ALJ's fresh evaluation of Dr. Blumenthal's and Ms. Marshall's opinions. See Sutherland, 322 F. Supp. 2d at 291 (holding that because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

### D. Analysis of Additional Information

This court did not take into account the additional information submitted by Pinkney in response to Defendant's Motion for Judgment on the Pleadings on June 17, 2013, because it is

not material to the case at hand. (Pl.'s Opp'n (Dkt. 22).) Additional evidence is taken into account only if the evidence is new and material. See Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (citing 42 U.S.C. § 405(g)). For evidence to be new, it cannot "merely be cumulative of what is already in the record." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (citing Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984)). For evidence to be material, it must be "both relevant to the claimant's condition during the time period for which benefits were denied and probative," id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975)), and must provide "a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently." Id. (citing Szubak, 745 F.2d at 833). Additionally, a claimant is required to provide good cause for presenting the evidence at this point and not earlier in the case. See id. (citing Tolany v. Heckler, 765 F.2d 268, 272 (2d Cir. 1985)).

The additional evidence consists of Pinkney's current medications (Pl.'s Opp'n at 1), a report written by Edan Sarid, M.D., on May 14, 2013 (id. at 2-3), and a report written by Horacio Preval, M.D., on June 5, 2013 (id. at 4-5).

The court is persuaded by the letter, written by the Commissioner, which enclosed Pinkney's response that includes this additional evidence. (Comm'r Ltr. Encl. Pl.'s Opp'n ("Comm'r Ltr.") (Dkt. 23).) Pinkney's additional evidence is new because it does not reiterate anything already presented in the record, but rather provides additional medical information. (See Pl.'s Opp'n.) However, the additional evidence fails to meet the requirements for materiality because it is not relevant to the "time period for which benefits were denied," Tirado, 842 F.2d at 597, since it consists of medical opinions written more than three years following the final decision of the Commissioner. (Comm'r Ltr at 1.) Because these records are not material,

15

they at most represent a subsequent worsening of a condition, in which case Pinkney is invited to reapply for SSI. See Felix v. Astrue, No. 11-CV-3697 (KAM), 2012 WL 3043203, at *13 (E.D.N.Y. 2012).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Judgment on the Pleadings is DENIED and this case is REMANDED for further proceedings consistent with this opinion, specifically, proper evaluation of the opinions of Plaintiff's treating physicians and a reevaluation of Plaintiff's subjective complaints in light of all the medical evidence.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
July 2, 2014

NICHOLAS G. GARAUFIS  
United States District Judge